Date signed December 27, 2006



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MARYLAND
### at GREENBELT

|  |  |  |
|---|---|---|
| **In Re:** | * | |
| **Rudolph Albert Minzie and** | * | |
| **Tangerine Francita Levy,** | * | Case No. 03-16823-TJC |
|  | * | (Chapter 7) |
| **Debtors.** | * | |
|  | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
|  | * | **Adv. Proc. No. 06-01762-TJC** |
| **Tangerine Francita Levy,** | * | |
|  | * | |
| **Plaintiff,** | * | |
|  | * | |
|  | * | |
| **vs.** | * | |
|  | * | |
| **Steven H. Greenfeld, Trustee,** *et al.*, | * | |
|  | * | |
| **Defendants** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF DECISION GRANTING THE DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT AND DISMISSING THE COMPLAINT WITH PREJUDICE**

Plaintiff Tangerine Francita Levy (the "Debtor" or together with Rudolph Albert Minzie,

the "Debtors"), filed an Amended Complaint to Quiet Title (the "Complaint") on November 2,

2006, against Defendants James Salter, III, Esq., Pool General Partnership, James Lazear, Eberle Lazear, Steven Greenfeld, Chapter 7 Trustee, Danang, LLC and Fidelity Funding Group (collectively the "Defendants").  Several of the Defendants filed motions to dismiss the Complaint.  Docket Nos. 3, 6, 8.  The Debtor filed no response to the motions.

The Complaint seeks an order declaring that the Debtors are the "absolute owners" of the property located at 13254 Wonderland Way, #400, Germantown, Maryland (the "Property") and enjoining any of the Defendants from asserting a claim to ownership or possession of the Property.  Generally, the Complaint sets forth two theories for relief; (1) Defendants James and Eberle Lazear (the "Lazears") should not have been allowed to foreclose on the Property and, therefore, the foreclosure sale is void and no rights should be afforded to the purchasers or their successors; and (2) the Steven Greenfeld, the Chapter 7 Trustee (the "Chapter 7 Trustee" or the "Trustee") abandoned any interest in the Property, any proceeds from its sale or claims against the Lazears that sprung from its ownership or their foreclosure sale.

The Court has reviewed the Complaint in detail. The Complaint is frivolous. The claims asserted in the Complaint either have been addressed by this Court on several occasions (as well as by the Circuit Court for Montgomery County), or they lack merit.

The Court scheduled a hearing for December 19, 2006, at which the Debtor failed to appear.  This is not the first time the Debtors have filed frivolous pleadings, only to have opposing parties file responses and appear at hearings at which the Debtors fail to appear.  Most recently, in the main bankruptcy case, Case No. 03-16823-TJC, the Debtors filed a series of motions at Docket Nos. 111, 112, 113, 114, 115, 116 and 117 (the "Motions").  These filings, which will be addressed in greater length below where appropriate, were repetitive, vitriolic and

unsubstantiated.  After the affected parties responded, the Court set the Motions for hearing on May 26, 2006, at which the Debtors failed to appear.  The Court denied the Motions on the merits, making detailed findings of fact and conclusions of law on the record in open court.  The Debtors did not appeal those findings and conclusions, and the rulings of the Court on those Motions are final.

As described further below, in ruling on the motions to dismiss, the Court takes judicial notice of prior orders, rulings, filings and exhibits entered or filed in the main bankruptcy case.[1]  These matters were referred to the Court by the Defendants, either generally or specifically.  Accordingly, pursuant to Fed. R. Civ. P. 12(b), made applicable to this case by Fed. R. Bankr. P. 7012(b), the Court shall treat the motions to dismiss as motions for summary judgment and dispose of this matter under Fed. R. Civ. P. 56, made applicable in bankruptcy proceedings by Fed. R. Bankr. P 7056.

**STANDARD OF REVIEW**

Summary judgment under Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses.  Celotex v. Catrett, 477 U.S. 317, 323 (1986).  To that end, the court considers all evidence in a light most favorable to the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (all justifiable inferences are drawn in the non-

---

[1] See In re Brown, 293 B.R. 865, 868 (Bankr. D. Mich. 2003) (finding that the court may take judicial notice of its own files pursuant to Fed. R. Evid. 201 citing Alofs Mfg. Co. v. Toyota Mfg., Kentucky, Inc. (Matter of Alofs Mfg. Co.), 209 B.R. 83, 96 (Bankr. W.D. Mich. 1997).

movant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. Id at 247-48 (emphasis added). Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. Id. Therefore, once a motion for summary judgment is made and supported as provided in the Rule, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-movant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. Celotex, 477 U.S. at 325. If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted. Liberty Lobby, Inc., 477 U.S. at 248.

## MATERIAL FACTS NOT IN DISPUTE

On March 25, 1998, the Lazears, as sellers, and the Debtors, as purchasers, executed a land installment contract (the "Contract") for the sale of the Property.[2] A copy of the Contract has previously been submitted to this Court. The Contract called for monthly payments of $1,017.63. Id. Paragraph 4 of the Contract called for final settlement on or before June 15, 2000. The Lazears retained title as security but took no other security. Id.

The Debtors failed to close on June 15, 2000, but continued to make monthly payments to the Lazears until August, 2002. Id at p. 2. In August, 2002, the Lazears notified the Debtors of their intention to enforce the Contract and demanded that the Debtors vacate the Property. The Debtors, disputing the legal and equitable rights of the parties, refused to tender payment to the Lazears after August, 2002. Id.

---

[2] Stipulation of Facts on Motion for Relief From Stay, p. 1. Docket 24 in Case No. 03-16823.

On March 19, 2003, the Lazears initiated proceedings in the Circuit Court for Montgomery County, Maryland, to enforce the Contract. On March 31, 2003, the Circuit Court for Montgomery County entered its Order for Sale of Premises under Land Installment Contract (the "Sale Order"). Id.

On June 24, 2003, the Debtors filed a voluntary petition under Chapter 13 commencing Case No. 03-16823-TJC. No sale of the Property occurred pursuant to the Sale Order prior to the filing of the voluntary petition in this case. Id.

The Lazears filed a motion for relief from the automatic stay to allow for a foreclosure sale in order to enforce the Sale Order. Docket No.18 in Case No. 03-16823. After substantial briefing by the parties, this Court entered the Interim Order Granting Adequate Protection Upon Motion for Relief from Automatic Stay (the "Interim Order"). Docket No. 40 in Case No. 03-16823. The Interim Order required the Debtors to continue to make monthly payments to the Lazears pending the Court's resolution of the motion for relief from stay. Id. On May 3, 2004, after the Debtors failed to make their monthly payments to the Lazears in contravention of the Interim Order, the Court granted the Lazears motion for relief from the automatic stay, allowing them to proceed with the foreclosure sale. Docket No. 52 in Case No. 03-16823. In so doing, the Court found that the Debtors had "failed to pay pursuant to the [Interim Order] by failing to make monthly payments for the period of January through April, 2004." Docket No. 52 in Case No. 03-16823 at p.2.

The Debtors filed a motion to reconsider the order lifting the automatic stay. Docket No. 56 in Case No. 03-16823. After the Lazears' filed an opposition, the Court set the motion to reconsider for a hearing on June 25, 2004, sending proper notice to the Debtors. Docket No. 58

in Case No. 03-16823.  The Debtors failed to appear at the hearing scheduled on their motion.  Docket No. 62 in Case No. 03-16823.

The Debtors then filed an "Emergency Ex Parte Motion" (the "Ex Parte Motion") in which they sought many forms of relief, including reinstating the automatic stay, stopping the eviction from the Property, dismissing the Trustee and appointing a new Trustee.  Docket No. 69 in Case No. 03-16823.  The relief sought in the Ex Parte Motion was based on many of the same claims that are raised in the instant Complaint concerning the Lazears' status under the Contract and their alleged lack of right to foreclose on the Property.  In support of the Ex-Parte Motion, the Debtors submitted many filings from the Circuit Court foreclosure action.  Id., Exhibits 1-10.

In the meantime, the Lazears proceeded with the foreclosure action.  The foreclosure sale occurred on August 20, 2004.  The Order of Ratification from the Circuit Court was granted in October, 2004.  The Debtors then filed various motions in the Circuit Court to stay their eviction from the Property and to rescind the order of ratification.  See Docket No. 69, Exhibits 1-10 in Case No. 03-16823.  The relief sought in these motions was based on many of the same claims that are raised in the instant Complaint.  See e.g., Docket No. 69 in Case No. 03-16823, Exhibit 2.  Ultimately, these motions were denied by the Circuit Court and the Debtors noticed an appeal to the Maryland Court of Special Appeals.  Docket No. 69, Exhibit 8.

By that time, on August 24, 2005, the Debtors converted their bankruptcy case from chapter 13 to chapter 7.  Docket Nos. 77, 78 in Case No. 03-16823.  The Debtors' stated that the reason for converting the case to chapter 7 was "so that the Bankruptcy Trustee can take complete control of all matters in settling debtors' bankruptcy estate."  Docket No. 77 in Case

No. 03-16823.  Mr. Steven Greenfeld was appointed the Chapter 7 Trustee.  The Chapter 7 Trustee dismissed the appeal.  See Complaint, ¶ 34.

Subsequently, Defendant Pool General Partnership, the entity that purchased the Property at a foreclosure sale, filed a motion for relief from the automatic stay to take possession of the Property, alleging that the Debtors would not vacate.  Docket No. 100 in Case No. 03-16823.  Without objection by the Debtors, the Chapter 7 Trustee consented to the relief requested.  Docket No. 107 in Case No. 03-16823.

The Debtors then filed in this Court the Motions that, among other things, raised the same claims as in the Complaint with respect to the Lazears status under the Contract and their alleged lack of right to foreclose on the Property.  At a hearing on May 26, 2006, at which the Debtors failed to appear, the Court denied the Motions on the merits, making detailed findings of fact and conclusions of law on the record.  The Debtors did not appeal those findings and conclusions, and the Court's rulings on the Motions are final.

## CONCLUSIONS OF LAW

**1.    The Debtors have no standing to assert rights in the Property or bring litigation claims on behalf of the estate**.

In the Complaint, the Debtor alleges that the Lazears should not have been allowed to foreclose against the Property because, among other reasons, they held only an unperfected lien against the Property.  Leaving aside for the moment the prior rulings against the Debtors by the Circuit Court of Maryland and this Court, it is apparent that the Debtor has no standing to bring such claims. The Chapter 7 Trustee has the exclusive right and standing to bring actions on behalf of the estate.

A bankruptcy trustee represents the estate and "has capacity to sue and be sued."  11 U.S.C.§ 323.  The trustee is specifically authorized to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  Id § 704(a)(1). "Property of the estate" under § 541(a) has "uniformly been interpreted to include causes of action."  Logan v. JKV Real Estate Servs. (In re Bogdan), 414 F.3d 507, 512 (4th Cir. 2005) (quoting, Polis v. Getaways, Inc. (In re Polis), 217 F.3d 899, 901 (7th Cir. 2000).  The "trustee in bankruptcy succeeds to all causes of action held by the debtor and debtor lacks standing to pursue those causes of actions."  Detrick v. Panalpina, Inc., 108 F.3d 529, 535 (4th Cir. 1997) (quoting, Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988).  "[T]he decision whether to pursue a claim or not is vested within the trustee's discretion."  Detrick, 108 F3d. at 535.

The Debtors themselves recognized this principle.  The Debtors stated that the reason for voluntarily converting their case from Chapter 13 to Chapter 7 was "so that the Bankruptcy Trustee can take complete control of all matters in settling debtors' bankruptcy estate."  Docket No. 77 in Case No. 03-16823-TJC.  The Debtors may be disappointed that the Chapter 7 Trustee decided not to pursue their alleged claims against the Lazears, but their disappointment does not allow them to usurp the role or authority of the Chapter 7 Trustee.  The Debtors simply have no standing or right to pursue this litigation against the Lazears or their successors for the claims alleged in the Complaint.

  **2.** **The Trustee did not abandon the estate's interest in the Property, any claims against the Lazears or the surplus from the sale of the Property.**

  The Debtor contends for various reasons that the Chapter 7 Trustee abandoned legal title to the Property or the claims against the Lazears. This contention is without merit, and reflects a lack of understanding of abandonment under the Bankruptcy Code.

  Section 554 of the Bankruptcy Code sets forth the framework for the abandonment of property of the estate. 11 U.S.C. § 554.

> [A]bandonment constitutes a divestiture of all of the estate's interest in the property. Property that is abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed.

Collier on Bankruptcy, ¶ 554.02 Vol. 5 (15th Ed.). Under Section 554(a), after notice and a hearing, the trustee can abandon any property of the estate that is of inconsequential value to the estate. Section 554(c) governs so-called technical abandonment: any property scheduled under Section 521(1) that has not been administered at the time of the closing of the case "is abandoned to the debtor and administered for purposes of Section 350…." 11 U.S.C. § 554(c).

  No allegation made in the Complaint is sufficient to establish that an actual abandonment occurred under Section 554(a) or that a technical abandonment occurred under Section 554(c), and a review of the docket record in Case No. 03-16823 reveals that no abandonment has occurred. First, the Trustee has made no voluntary abandonment under Section 554(a). Indeed, the uncontroverted record in this bankruptcy case establishes beyond dispute that the Chapter 7 Trustee has not abandoned the estate's interest in the Property, any claims against the Lazears with respect to their right to foreclose, or the surplus from the foreclosure sale. To the contrary,

the Chapter 7 Trustee has administered those assets or claims and is prepared to administer the surplus for the benefit of the creditors.

The Debtor claims that the Chapter 7 Trustee abandoned the estate's claims against the Lazears when he dismissed the Debtors' appeal to the Maryland Court of Special Appeals of the denial of the Debtors' motion to rescind the order of ratification.  The Chapter 7 Trustee's dismissal of the Debtor's appeal does not constitute abandonment.  Rather the dismissal of the Debtors' appeal is, at the least, an implicit determination by the Trustee not to expend estate resources to pursue an appeal that the Trustee determined was meritless.  In dismissing the appeal, the Trustee cleared the way to receive the surplus from the sale of the Property so that he could administer the surplus, pay creditors, and close the case. Contrary to an intent by the Trustee to abandon the litigation claim to the Debtors in order to allow them to continue to pursue frivolous litigation claims that could delay the administration of the estate, the Trustee sought to end the litigation so he could proceed with administering the estate's assets.

Second, Section 554(c) simply does not apply because the case has not been closed.  Accordingly, the Trustee did not abandon the litigation claims against the Lazears (which have been resolved with the Trustee's consent), the estate's interest in the Property (which has been sold without challenge by the Trustee) or the estate's interest in the surplus (which the Trustee is administering).  The Debtor's contention to the contrary is without merit.

3.      **The doctrine of claims preclusion bars the relitigation of the Debtor's claims**.

Under the doctrine of _res judicata_, or more specifically claim preclusion, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and

necessarily resolved in the first adjudication.  First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.), 81 F.3d 1310, 1314-15 (4th Cir. 1996).

In this case, both federal claims preclusion and state claims preclusion apply because both this Court and the Circuit Court of Montgomery County, Maryland, have resolved issues raised in the Complaint. With respect to federal claim preclusion, in order for claim preclusion to apply the following must be true; (1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties are identical, or in privity, in the two actions; and; (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.  Id. Additionally, the judgment bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.  Id. at 1315.

With respect to the rulings of the Circuit Court of Montgomery County, federal courts must give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.  Allen v. McCurry, 449 U.S. 90, 96 (1980); See also, Hagan v. McNallen (In re McNallen), 62 F.3d 619, 624 (4th Cir. 1995). Because the judgment for sale and the ratification order sprung out of the Maryland courts, this Court must look to Maryland claim preclusion law to determine whether the Debtor is barred from bringing the claims against the Lazears.

In Maryland, the doctrine of res judicata bars the relitigation of a claim if there is; (1) a final judgment in a previous litigation; (2) where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which

could have or should have been raised in the previous litigation.  Anne Arundel County Bd. of Educ. v. Norville, 390 Md. 93, 106-107 (Md. 2005).

In this case, the claims asserted by the Debtor concerning the Lazears' lack of right to foreclose on the Property were raised in the main bankruptcy case twice before.  See Docket Nos. 69, 111-117, in Case No. 03-16823.  On both occasions, this Court ruled against the Debtors. Docket Nos. 71 and 139 in Case No. 03-16823.  Neither of the orders denying the Debtors' requested relief was appealed, and both are final and unappealable.  Accordingly, the Debtors are barred from seeking to raise those claims again.

Moreover, it is apparent to this Court that these claims were raised and resolved by a final judgment in the Circuit Court proceedings as well.  The record in those proceedings has been established in this Court by, among other sources: (1) the stipulation entered into by the Debtors and the Lazears, Docket No. 24 in 03-18623; (2) the exhibits filed by the Debtors in support of their Ex-Parte Motion, Docket No. 69 and Exhibits 1-10 thereto, filed in Case No. 03-16823; and (3) the Debtor's allegations in the Complaint.  Accordingly, the Debtor is barred from seeking to relitigate these issues again.

4        **Sanctions**

As stated above, the filing of the Complaint is not the first time the Debtor has filed frivolous pleadings, only to have opposing parties file responses and appear at a hearing at which the Debtor fails to appear.  In addition, the filings by the Debtors have been vitriolic and unsubstantiated.  See e.g., Complaint ¶ 39. Finally, the Debtors filings have been repetitive; many of the claims raised in the Complaint have been addressed on numerous occasions.

It is apparent that the Debtors are frustrated at losing their home through a foreclosure sale after they were unable to maintain their payments under the Contract. The Debtors' frustration aside, they cannot continue this pattern of filing frivolous claims that require opposing parties to expend funds to respond, especially where they fail to prosecute the claims. Nor can they continue to file pleadings or motions that raise the issues that have long and many times been resolved.

No party has yet requested that the Court impose sanctions on the Debtors for their actions. The Debtors are forewarned, however, that further filings of the nature of the Complaint or the motions referred to above will be met with the imposition of sanctions.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss the Complaint shall be treated as motions for summary judgment and will be granted and the Complaint will be dismissed with prejudice. An appropriate order will be issued.


cc:     Plaintiff
        Defendants
        Defendants' Counsel
        Office of the US Trustee